# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Leonard J. Richards,                                    File No. 11-CV-965 (JRT/TNL)

          Plaintiff,

  v.

Great Western Insurance Company,
a foreign corporation doing business in
Minnesota,

Gill Brothers Funeral Chapels, Inc.,
a Minnesota Chapter 302A business
corporation,

Federal Trade Commission,                              **REPORT &**
                                                       **RECOMMENDATION**
Patrick Donahoe,
United States Postmaster General,

State of Minnesota,
by Lori R. Swanson, its Attorney General,

David J. Benke,
Supervisor, Minnesota Department of Health,

Michael J. Rothman,
Commissioner, Minnesota Department of
Commerce,

Thomas Roy,
Commissioner, Minnesota Department of
Corrections,

and all persons acting in concert with any of
the defendants or on their behalf,

          Defendants.

Leonard J. Richards, 1101 Linden Lane, Faribault, MN 55021 (pro se Plaintiff);

1

Michael P. Eldridge and Timothy J. Nolan, McGrann, Shea, Carnival, Straughn & Lamb, Chtd., 800 Nicollet Mall, Suite 2600, Minneapolis, MN 55402-7035 (for Defendant Great Western Insurance Company);

Tamara O'Neill Moreland and Julie N. Nagorski, Larkin Hoffman Daly & Lindgren Ltd., 7900 Xerxes Avenue South, Suite 1500, Minneapolis, MN 55431-1194 (for Defendant Gill Brothers Funeral Chapels, Inc.);

Ana H. Voss, Assistant United States Attorney, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415 (for Defendants Federal Trade Commission and Patrick Donahoe);

Jocelyn F. Olson, Assistant Attorney General, Minnesota Attorney General's Office, 445 Minnesota Street, Suite 1200, St. Paul, MN 55101-2130 (for Defendants State of Minnesota, David J. Benke, Michael J. Rothman, and Thomas Roy).

---

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on three motions to dismiss: Defendant Great Western Insurance Company's ("Great Western") Motion to Dismiss (Docket No. 17); Defendant Gill Brothers Funeral Chapels, Inc.'s ("Gill Brothers") Motion to Dismiss (Docket No. 23); and Defendants Federal Trade Commission ("FTC") and Patrick Donahoe's (collectively, "Federal Defendants") Motion to Dismiss (Docket No. 29). These motions has been referred to the undersigned for a report and recommendation to the District Court under 28 U.S.C. § 636 and Local Rule 72.1.  (*See* Docket No. 35.)

In addition, there are two other motions filed which relate to the aforementioned motions: Plaintiff's Motion for Sanctions and for a Protective Order (Under Fed. R. Civ. P. 5.2(a), (e)) (Docket No. 76; *see* Docket No. 91) and Plaintiff's Motion to Strike Great Western's Reply and Supporting Affidavit (Docket No. 115).

**I.**

**A.  Factual Background**

This action involves a preneed, irrevocable funeral trust ("Trust") established for Plaintiff Leonard J. Richards by his late half-sister, June E. Rankila.  (Docket No. 1-1, ¶ 28, Ex. A.)  *See*

Minn. Stat. § 149A.97 (regulating preneed funeral arraignments).  The Trust's original trustee was Washburn-McReavy Funeral Chapels, Inc.,[1] which deposited the Trust's funds in an account at Associated Bank, N.A. (Docket No. 1-1, ¶¶ 29, 31-32, Exs. A, B.)

Of relevance to this litigation, Plaintiff is currently incarcerated and serving consecutive life terms.  (Docket No. 1-1, ¶ 21.)  *See Minnesota v. Richards*, 552 N.W.2d 197 (Minn. 1996) (affirming conviction for first-degree premeditated murder of half-sister May Wilson in 1982 and sentence to life imprisonment); *Minnesota v. Richards*, 495 N.W.2d 187 (Minn. 1992) (affirming conviction for first-degree premeditated murder of attorney Robert Stratton in 1987 and sentence to life imprisonment); *In re Application of Richards*, No. CX-97-1259, 1998 WL 2427, at *1 (Minn. App. 1998) (noting Plaintiff is currently serving consecutive life terms).  Because Plaintiff is in the custody of the Commissioner of Corrections, the State of Minnesota provides for Plaintiff's needs, including food, clothing, housing, and medical care.  (Docket No. 1-1, ¶ 22.)  *See, e.g.*, Minn. Stat. §  243.557 (provision of meals); *see also* Minn. Stat. § 243.212 (inmate co-payments for health services required); Minn. Stat. § 243.23, subd. 3 (allowing commissioner to deduct certain expenses from funds earned by inmates, including room and board and medical expenses).

### 1.  Defendants Gill Brothers & Great Western

The events leading up to the instant dispute began in July 2010 when Plaintiff removed Washburn-McReavy Funeral Chapels, Inc., as trustee in favor of Gill Brothers.  (Docket No. 1-1, ¶¶ 33-34, Ex.C.)  Under Minnesota law, preneed funeral arrangements are funded "through prepayment to a funeral provider or through purchase of an insurance policy."  Minn. Stat. § 149A.02, subd. 33a; *see* Minn. Stat. § 149A.97, subd. 3a(4) (requiring disclosure of funding of preneed funeral arrangements to be either prepayment or purchase of insurance policy).  In order

---

[1] Washburn-McReavy Funeral Chapels, Inc., is not a party to this litigation.

to fund Plaintiff's preneed arrangements, Gill Brothers provided Plaintiff with a life-insurance application for a policy to be issued by Great Western. (*See* Docket No. 1-1, ¶¶ 19-20, 40, 44-46.)  Great Western subsequently declined to insure Plaintiff's life on the basis of his incarceration. (Docket No. 1-1, ¶¶ 21, 26-27.)

Plaintiff contends that (1) because his basic needs are provided for by the State of Minnesota, he is a recipient of public assistance; (2) as a recipient of public assistance, he is a member of a protected class; and (3) Great Western discriminated against him when it refused to insure Plaintiff's life. (Docket No. 1-1, ¶¶ 22-24, Relief (A)(1).)  Plaintiff also asserts state-law claims against Great Western for negligence in selecting Gill Brothers as its agent; breach of contract; breach of fiduciary duty; and tortious conduct. (Docket No. 1-1, ¶¶ 37-38.)

Following Great Western's denial of Plaintiff's application, Gill Brothers attempted to return to Plaintiff the funds from the Associated Bank account that Plaintiff had previously designated be transferred to Gill Brothers. (*See* Docket No. 1-1, ¶¶ 48-49, Ex. C.)  Due to Plaintiff's incarceration, Gill Brothers sent the funds to Plaintiff via the Minnesota Department of Corrections. (*See* Docket No. 1-1, ¶¶ 48-49.)  Plaintiff contends that, by sending the funds to Plaintiff in this manner, Gill Brothers caused the Trust to lose $90.48 of the gift money, citing *Weber v. Hvass*, 626 N.W.2d 426, 432-33 (Minn. App. 2001) ("The language of Minn. Stat. § 243.23, subd. 3 unambiguously authorizes [the Minnesota Department of Corrections] to deduct costs of confinement from non-wage funds.").

Plaintiff asserts state-law claims of negligence, conversion, breach of fiduciary duty, and tortious conduct against Gill Brothers. (*See* Docket No. 1-1, ¶¶ 41-43, 48-51.)  Plaintiff also contends Gill Brothers violated the federal "Funeral Rule," 16 C.F.R. § 453 *et seq.* (Docket No. 1-1, ¶¶52-54.)  *See* 16 C.F.R. §§ 453.1-.9; *Fed. Trade Comm'n v. Hughes*, 710 F. Supp. 1524,

1525 (N.D. Tex. Feb. 7, 1989) ("The FTC's Funeral Rule . . . , 16 C.F.R. § 453, regulates unfair and deceptive acts in the funeral home industry . . . ."); s*ee also Harry & Bryant Co. v. Fed. Trade Comm'n*, 726 F.2d 993, 996-97 (4th Cir. 1984) (discussing history of Funeral Rule); *Funerals: A Consumer Guide*, Fed. Trade Comm'n, http://www.ftc.gov/bcp/edu/pubs/consumer/products/pro19.pdf (last visited January 2, 2012).

### 2.   Federal Defendants: FTC & Postmaster General Donahoe

To resolve his dispute with Gill Brothers and Great Western over his choice of trustee, Plaintiff contacted the FTC in an effort to seek relief under the Funeral Rule.  In November or December 2010, Plaintiff sent a certified letter through the United States Postal Service ("USPS") to the Funeral Service Consumer Assistance Program, relying on the address provided in the FTC's publication *Funerals: A Consumer Guide*.[2]  (*See* Docket No. 1-1, ¶¶ 54-55, Ex. E.) Plaintiff contends that his certified letter was not delivered and, therefore, he was deprived of the benefits of the program.[3]  (*See* Docket No. 1-1, ¶ 55.)

Plaintiff subsequently contacted the USPS to determine the whereabouts of his certified letter.  (Docket No. 1-1, ¶ 55.)  The USPS did not respond to Plaintiff's inquiry and, as a result, Plaintiff brought a breach-of-contract claim against Postmaster General Donahoe in his official capacity.  (Docket No. 1-1, ¶¶ 57-59.)

### 3.   State Defendants: Commissioner Rothman, Benke, State of Minnesota & Commissioner Roy

Plaintiff also sent a letter to Michael J. Rothman, Commissioner of the Minnesota Department of Commerce.  (Docket No. 1-1, ¶¶ 63-64.)  The commissioner of commerce is charged with regulating the insurance industry in the State of Minnesota.  Minn. Stat. § 60A.03,

---

[2] It is not clear from the Complaint when the certified letter was mailed as the certified mail receipt shown in Exhibit E has a date of November 16, 2010, while the Complaint states that "the United States Postal Service receipted for that Certified Mail item on December 24, 2010."  (Docket No. 1-1, ¶ 58, Ex. E.)
[3] It is not clear from the Complaint what happened to Plaintiff's certified letter.

subd. 2.   Plaintiff has not received a response to his letter and brings this action against Commissioner Rothman, in his individual and official capacities, for an order compelling Commissioner Rothman to investigate and respond to Plaintiff's letter.  (*See* Docket No. 1-1, ¶¶ 63-64.)

In addition, Plaintiff seeks injunctive relief against Defendants David J. Benke, Supervisor, Minnesota Department of Health; the State of Minnesota; and Thomas Roy, Commissioner of the Minnesota Department of Corrections, in his individual and official capacities (collectively, "State Defendants").  (*See* Docket No. 1-1, ¶¶ 60-62, 66-69.)  Plaintiff asks that this Court order Benke to investigate the conduct of Gill Brothers. (*See* Docket No. 1-1, ¶¶ 62, Relief (A)(9).)  *But see* Minn. Stat. §§ 149.03 (stating duties of the commissioner of health with respect to mortuary science and disposition of dead bodies, including accepting and investigating complaints), .60 (providing for disciplinary measures for failure to comply with regulations for "the removal, preparation, transportation, arrangments for disposition or final disposition of dead human bodies, or for the regulation of the practice of mortuary science"), .61 (complaint procedure).

As for the State of Minnesota and Commissioner Roy, Plaintiff asks this Court to order these defendants to implement the mortuary provisions of Plaintiff's health-care directive and provide the maximum amount available for mortuary, funeral, and burial expenses under Minnesota law and the policies of the Minnesota Department of Corrections.  (*See* Docket No. 1-1, ¶¶ 67-69, Relief (A)(11).)

### 4.   Other Claims & Damages

In addition to compensatory damages in connection with the aforementioned claims, Plaintiff seeks declaratory relief under the Minnesota Uniform Declaratory Judgments Act,

Minn. Stat. § 555.01 *et seq.*, against all defendants, which essentially resembles a directed verdict in favor of Plaintiff against all defendants on the above claims; injunctive relief; punitive damages; and costs and disbursements.  (*See* Docket No. 1-1, ¶ 70, Relief(A)-(E).)

### B.  Procedural History

This case originated in state court, in Ramsey County District Court, and was removed to this Court by the Federal Defendants.  (Docket No. 1.)  In lieu of filing responses, Great Western, Gill Brothers, and the Federal Defendants filed the instant motions to dismiss.[4]

In support of its motion to dismiss, Gill Brothers filed an affidavit of Daniel McGraw, which was accompanied by Exhibits A through C.  (Docket No. 26.)  Plaintiff moved for sanctions and a protective order, asserting that Exhibits A through C contained certain personal data identifiers regarding Plaintiff, including his social-security number and the month, date, and year of his birth.  (Docket Nos. 76-77.)  After reviewing Exhibits A through C and determining that the exhibits contained Plaintiff's social-security number and complete birthdate as well as financial-account information, this Court ordered (1) the Clerk of Court to place the affidavit and accompanying exhibits under seal, and (2) Gill Brothers to refile the affidavit and exhibits with all personal data identifiers redacted pursuant to Fed. R. Civ. P. 5.2 and to show cause why sanctions should not be imposed.  (Docket No. 91.)

Plaintiff subsequently moved to strike Great Western's reply to its motion to dismiss on grounds of ineffective service, asserting that he never received the reply or its accompanying affidavit.  (Docket Nos. 115-16.)

---

[4] The State Defendants have answered the Complaint, (*see* Docket No. 75), and subsequently moved for judgment on the pleadings and summary judgment, (*see* Docket No. 95).

## II.

The Federal Defendants have moved for dismissal under Fed. R. Civ. P. 12(b)(1), arguing that this Court lacks subject-matter jurisdiction over Plaintiff's claims for misrepresentation and breach of contract based on sovereign immunity, exhaustion, and the Contract Disputes Act. (*See* Docket No. 31 at 2-7.)  Plaintiff opposes the motion.  (*See* Docket No. 72.)

Plaintiff bears the burden to establish the existence of subject-matter jurisdiction and, if this Court concludes that jurisdiction is absent, it must dismiss the matter.  *Green Acres Enters., Inc. v. United States*, 418 F.3d 852, 856 (8th Cir. 2005); *Herden v. United States*, Civil No. 10-435 (JRT/LIB), 2011 WL 4538072, at *2 (D. Minn. Sept. 9, 2011).  Further, this Court is not restricted to the four corners of the Complaint when resolving questions of subject-matter jurisdiction.  "Because jurisdiction is a threshold question, the court may look outside the pleadings in order to determine whether subject matter jurisdiction exists."  *Green Acres Enters., Inc.*, 418 F.3d at 856.  "Trial courts have wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdiction facts under Rule 12(b)(1)."  *Johnson v. United States*, 534 F.3d 958, 964 (8th Cir. 2008) (quotation omitted); *see Herden*, 2011 WL 4538072, at *2.

### A.  Standard of Review

This Court must first decide whether the Federal Defendants have asserted a facial or factual attack as the nature of the Rule 12(b)(1) motion dictates the appropriate standard of review.  *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990) ("A court deciding a motion under Rule 12(b)(1) must distinguish between a 'facial attack' and a 'factual attack.'"; *Najbar v. United States*, No. 09-3143 (PJS/RLE), 723 F. Supp.2d 1132, 1133 (D. Minn. 2010)

("The appropriate standard of review of a Rule 12(b)(1) motion depends on the nature of the motion.").

> When a defendant challenges the factual basis of the court's subject-matter jurisdiction-that is, when the defendant alleges that under the facts as they *actually exist* the court does not have subject-matter jurisdiction-the court may take evidence and decide any disputed issues of fact that relate to the existence of subject-matter jurisdiction.  But when a defendant makes a so-called "facial attack" under Rule 12(b)(1)-that is, when the defendant argues that under the facts as they are *alleged in the complaint* the court does not have subject-matter jurisdiction-the court treats the factual allegations in the complaint as true and determines whether those allegations are sufficient to establish subject-matter jurisdiction.

*Najbar*, 723 F. Supp.2d at 1133-34 (citation omitted); *see also Jessie v. Potter*, 516 F.3d 709, 712 (8th Cir. 2008) ("Motions to dismiss for lack of subject-matter jurisdiction can be decided in three ways: at the pleading stage, like a Rule 12(b)(6) motion; on undisputed facts, like a summary judgment motion; and on disputed facts.").

The Federal Defendants do not expressly state whether they have brought a facial or factual attack and, arguably, aspects of each are present in their motion.  The Federal Defendants contend that claims of misrepresentation and failure to deliver mail are expressly excluded from the Federal Tort Claims Act's ("FTCA") waiver of sovereign immunity and that the Contract Disputes Act requires contract claims against federal agencies to be brought in the United States Court of Federal Claims.  (Docket No. 31 at 4-7).  These are facial attacks because they (1) assume the truth of the facts alleged in the Complaint, and (2) under those facts, assert that this Court lacks subject matter jurisdiction.

In contrast, the Federal Defendants' argument that Plaintiff has failed to exhaust his administrative remedies are factual challenges in the instant case because the Federal Defendants have enclosed in their motion papers affidavits from the respective agencies, which introduce

other facts based on claims searches these agencies have performed.  (Docket Nos. 31 at 4; 32; 33.)  *But see Faibisch v. Univ. of Minn.*, 304 F.3d 797, 801 (8th Cir. 2002) (rejecting argument "that factual challenges arise only when a court considers matters outside the pleadings").

Because the Federal Defendants' jurisdictional challenge can be resolved through an examination of the Complaint, the Court has not considered the affidavits proffered by the Federal Defendants.  The Court turns now to the facial challenges.

### B.  Tort Claims

#### 1.  Sovereign Immunity and the FTCA

"The term sovereign immunity refers to a general rule that the government cannot be sued unless it allows itself to be sued."  *Claude v. Smola*, 263 F.3d 858, 860 (8th Cir. 2001). Accordingly, a district court has "subject-matter jurisdiction over a claim against the United States only if the United States has waived its sovereign immunity."  *Herden*, 2011 WL 4538072, at *2 (citing *United States v. Orleans*, 425 U.S. 807, 814 (1976)).

"In 1946, Congress passed the F[TCA], a limited waiver of the United States's sovereign immunity, to permit persons injured by federal-employee tortfeasors to sue the United States for damages in federal district court."  *Mader v. United States*, 654 F.3d 794, 797 (8th Cir. 2011); *see* 28 U.S.C. §§ 2671-80.  Under the FTCA, "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages."  28 U.S.C. § 2674.  Prior to asserting a tort claim against the United States, however, the claimant must exhaust his administrative remedies within the appropriate federal agency.  *Id.* § 2675(a).  Further, certain actions are expressly excluded from the FTCA's

waiver, including claims of misrepresentation, *id.* § 2680(h), and those "arising out of the loss,

miscarriage, or negligent transmission of letters or postal matter," *id.* § 2680(b).

## 2.   Misrepresentation and Negligent Handling of Certified Letter

Plaintiff claims that the FTC engaged in "tortious conduct" by promulgating a publication

that "contained false information, which Plaintiff in good faith relied on to his detriment."

(Docket No. 1-1, ¶¶ 55-56.)   The thrust of Plaintiff's claim is that the FTC misrepresented the

address to which Plaintiff should address his correspondence.   Plaintiff has asserted a claim that

falls squarely within the misrepresentation exception carved out by 28 U.S.C. § 2680(h).   As one

court in this District recently observed:

> Congress used the word "misrepresentation," and that word is
> broad enough to reach all types of claims for misrepresentation,
> whether those claims seek recovery for commercial injury,
> physical injury, or emotional injury.   Further, the word is broad
> enough to reach a claim based on a misrepresentation regardless of
> how, or even whether, the plaintiff relied on the misrepresentation.

*Najbar v. United States*, Civ. No. 09-3143 (PJS/RLE), 723 F. Supp.2d 1132, 1137 (D. Minn. July

6, 2010).   Therefore, the Court concludes that Plaintiff's claims against the FTC should be

dismissed for lack of subject-matter jurisdiction.

Likewise, to the extent that the Complaint can be construed as asserting a claim against

Postmaster General Donahoe and the USPS for negligent handling of the certified letter,[5] this

claim is barred by 28 U.S.C. § 2680(b).   *See Dolan v. United States Postal Serv.*, 546 U.S. 481,

489, 126 S. Ct. 1252, 1258 (2006) ("Congress intended to retain immunity, as a general rule, . . .

for injuries arising, directly or consequentially, because mail either fails to arrive at all or arrives

late, in damaged condition, or at the wrong address.").

---

[5] The Complaint asserts that "[b]y its breach of contract, the [USPS] has inflicted harm on Plaintiff . . . ."   (Docket No. 1-1, ¶ 59.)   Because Plaintiff is a pro se litigant, however, the pleadings are broadly construed.   *See Whitson v. Stone Cnty. Jail*, 602 F.3d 920, 922 n.1 (8th Cir. 2010) ("[A] pro se complaint must be liberally construed.").

### C. Contract Claim

As for the "breach of contract" claim asserted against Postmaster General Donahoe and the USPS, the Federal Defendants argue that this Court lacks jurisdiction over breach-of-contract actions brought against a federal agency, citing *Anselma Crossing, L.P. v. United States Postal Serv.*, 637 F.3d 238, 245 (3d. Cir. 2011) (noting "[t]he clear majority of courts of appeal that have addressed whether the [Contract Disputes Act] bars federal district court jurisdiction over breach of contract claims against the USPS have found that it does"). (Docket No. 31 at 6.) *See Goodin v. United States Postal Inspection Serv.*, 444 F.35 998, 1001-02 (8th Cir. 2006) (claim for implied breach of contract against United States Postal Inspection Service was governed by Contract Disputes Act).

Plaintiff alleges that he paid $6.15 for certified mail services; the USPS failed to respond to his request for proof of delivery; and, therefore, Postmaster General Donahoe and the USPS breached the contract made with Plaintiff for certified-mail services. (*See* Docket No. 1-1, ¶¶ 58-59.) *See* United States Postal Service, Domestic Mail Manual 503.3.21 (Nov. 7, 2011) ("Certified Mail service provides the sender with a mailing receipt and, upon request, electronic verification that an article was delivered or that a delivery attempt was made. . . . USPS maintains a record of delivery (which includes the recipient's signature) for a specified period of time.").

The Eighth Circuit has held, however, that claims like Plaintiff's are essentially disputes over postal services although they may "echo [in] contract." *LeMay v. United States Postal Serv.*, 450 F.3d 797, 801 (8th Cir. 2006). In *LeMay*, the plaintiff alleged that "the Postal Service had a contractual obligation to provide priority services and in direct contradiction to its promises, the Postal Service does not provide preferential handling or handling that results in any

meaningful expedition of Priority Mail over that accorded the much less expensive First Class Mail." *Id.* at 800 (quotations and citations omitted).  The Eighth Circuit held that

> Congress removed the district courts' jurisdiction over claims regarding postal rates and services. . . . by enacting 39 U.S.C. § 3662, which provides that:
>
> Interested parties who believe the Postal Service is charging rates which do not conform to the policies set out in this title or who believe that they are not receiving postal service in accordance with the policies of this title may lodge a complaint with the Postal Rate Commission in such form and in such manner as it may prescribe.

*Id.* (quoting prior version of 39 U.S.C. § 3662).  The Eighth Circuit concluded that while LeMay's allegations "echo contract, . . . the issues are classic questions of postal rates and services."  *Id.* at 801.  Because 39 U.S.C. § 3662 gave *exclusive* jurisdiction to the Postal Rate Commission over complaints involving postal service, a federal district court lacks subject matter jurisdiction "over commonplace service complaints" despite "artful pleading."  *Id.* at 800-801; *see id.* at 800 ("[I]t is 'fairly discernable' that Congress intended to remove consideration of postal service complaints from the courts altogether.").

This Court lacks subject-matter jurisdiction over Plaintiff's certified-mail claim for the same reasons articulated in *LeMay*.  Plaintiff is dissatisfied with the postal service (or lack thereof) that he received.  While section 3662 was overhauled in 2006 with the Postal Accountability and Enhancement Act ("PAEA"), Pub. L. No. 109-435, § 205, 120 Stat. 3198, 3216 (2006), jurisdictional exclusivity over disputes was maintained with the redesignated Postal Regulatory Commission:

> Any interested person . . . who believes the Postal Service is not operating in conformance with the requirements of the provisions of sections 101(d) [(postal rates)], 401(2) [(adoption, amendment, and repeal of postal rules and regulations)] . . . or this chapter [(postal rates, classes, and services)] (or regulations promulgated

under any of those provisions) may lodge a complaint with the
Postal Regulatory Commission . . . .

39 U.S.C. § 3662(a); *see* PAEA §§ 601, 604, 120 Stat. at 3238-39, 3241 (establishment of the

Postal Regulatory Commission and redesignation of the Postal Rate Commission).  Because the

Postal Regulatory Commission has exclusive jurisdiction over complaints regarding postal

service, this Court lacks subject-matter jurisdiction over Plaintiff's claim regarding the certified

letter.

Further, while Plaintiff alleges that he wrote to the USPS, inquiring into the whereabouts

of his certified letter, there is no indication that Plaintiff took any additional steps to exhaust

remedies available through the USPS—with the Postal Regulatory Commission or otherwise.

*Cf.* 39 U.S.C. § 3663 (proving for appellate review of a final order or decision of the Postal

Regulatory Commission in the United States Court of Appeals for the District of Columbia);

United States Postal Service, Domestic Mail Manual 608.6.1 ("Any postal customer may

complain or inquire about postal products [and] services . . . at any Post Office or directly to the

USPS Consumer Advocate . . . .  A complaint or inquiry may be made in person, by telephone,

by e-mail, or by letter. A complaint or inquiry about the handling of a specific piece of mail

should include the related envelope or wrapper and copies of all postal forms filed. A customer

who is dissatisfied with the local handling of a complaint or inquiry may send a written appeal to

the Consumer Advocate. A court of law can require such appeal as a legal prerequisite for

hearing a customer's suit against the USPS."); *accord Emmons v. United States Post Office*, 899

F.2d 1244 (9th Cir. 1990) (unpublished) (plaintiff's failure to exhaust administrative remedies

regarding lost certified letter resulted in lack of subject-matter jurisdiction); *Snow v. United*

*States Postal Serv.*, 778 F. Supp.2d 102, 107-09 (D. Me. March 14, 2011) (dismissing non-tort

claims against USPS for lack of subject-matter jurisdiction due to failure to exhaust administrative remedies).

### D.  Declaratory Relief

Finally, Plaintiff asserts that "[n]owhere in their dismissal memorandum do the Federal Defendants contest Plaintiff's claim for declaratory relief" and that he is entitled to the declaratory relief set forth in Section E of his responsive memorandum.  (Docket No. 72 at 1.) Section E, however, reads like a grant of summary judgment on the aforementioned claims over which the Court has already concluded that it lacks subject-matter jurisdiction.  (*See* Docket No. 72 at 3-4).  Therefore, Plaintiff's argument is without merit.

### III.

The recommended dismissal of all claims against the Federal Defendants necessarily requires this Court to examine its continuing jurisdiction over this matter, including without limitation, the motions to dismiss filed by Great Western and Gill Brothers.

"Federal courts are courts of limited jurisdiction.   They possess only that power authorized by Constitution and statute."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S. Ct. 1673, 1675 (1994); *see Bowles v. Russell*, 551 U.S. 205, 212, 127 S. Ct. 2360, 2365 (2007) ("Within constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider."); *O'Neill v. St. Jude Medical*, No. 04-1211 (JRT), 2004 WL 1765335, at *5 (D. Minn. Aug. 5, 2004) ("However, this Court is mindful that the federal courts are courts of limited jurisdiction, whose power depends on an explicit grant of jurisdiction." (citing *Kokkonen*, 511 U.S. at 377, 114 S. Ct. 1673, 1675)).  "Subject matter jurisdiction defines the court's authority to hear a given type of case . . . [and] represents the extent to which a court

can rule on the conduct of persons or the status of things." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, ___, 129 S. Ct. 1862, 1866 (2009) (citation and quotations omitted).

As a result, "federal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdiction questions that the parties overlook or elect not to press." *Henderson ex rel. Henderson v. Shinseki*, ___ U.S. ____, ____, 131 S. Ct. 1197, 1202 (2011); *see City of Kansas City, Mo. v. Yarco Co.*, 625 F.3d 1038, 1040 (8th Cir. 2010) (noting federal court's "independent duty to determine subject matter jurisdiction"); *Lindgren v. State Farm Ins. Co.*, No. 04-3153 (JRT/FLN), 2005 WL 1325053, at *1 (D. Minn. May 23, 2005) ("A federal court is obligated to examine and confirm the basis for its jurisdiction, even where neither party to the controversy has raised the issue.").

This action was removed to this Court pursuant to 28 U.S.C. § 1442(a), which allows defendant federal officers and agencies to remove an action from state court to the federal district court in which the action is pending. (*See* Docket No. 1 at 1-2.) Following removal, this Court arguably possessed supplemental jurisdiction over Plaintiff's various state-law claims. *See* 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

After an action has been removed to federal district court, however, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case s*hall be remanded*. . . . [and t]he State court may thereupon proceed with such case." 28 U.S.C. § 1447(c) (emphasis added)); *see In re Norfolk S. Ry. Co.*, 592 F.3d 907, 910 (8th Cir. 2010);

*Peterson v. BASF Corp.*, 12 F. Supp.2d 964, 968 (D. Minn. June 30, 1998); *see also* 28 U.S.C. § 1367(c) (providing reasons a federal district court may decline to exercise supplemental jurisdiction, including the predominance of state claims over those claims which the district court has original jurisdiction and the dismissal of all claims over which the district court has original jurisdiction).

This Court has recommended dismissal of all claims against the Federal Defendants for lack of subject matter jurisdiction. The presence of the Federal Defendants—and their removal of this case—was the basis for this Court's jurisdiction. (*See* Docket No. 1 at 1-2.) Without the Federal Defendants, this Court can discern no articulable basis for its continuing jurisdiction. First, there are no remaining federal questions. To the extent the Complaint could be read as seeking relief under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Plaintiff has done nothing more than draw parallels between this statute and the Minnesota Uniform Declaratory Judgments Act, which gives Minnesota state courts the "power to declare rights, status, and their legal relations." Minn. Stat. § 555.01. (*See* Docket No. 1-1, ¶¶ 1, 3 (noting 28 U.S.C. § 2201 is the "federal analogue" to the Minnesota Uniform Declaratory Judgments Act).) More importantly, "the Declaratory Judgment Act does not provide an independent basis for federal jurisdiction." *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010) (quotation omitted); *see also Vaden v. Discover Bank*, 556 U.S. 49, ___ n.19, 129 S. Ct. 1262, 1278 n.19 (2009) ("[T]he Declaratory Judgment Act does not enlarge the jurisdiction of the federal courts; it is procedural only." (quotation omitted)).

To the extent that Plaintiff is asserting violations of the Funeral Rule, (*see* Docket No. 1-1, ¶¶ 46-47), these claims would fail because no private cause of action exists. *See SCI Tex.*

*Funeral Servs., Inc. v. Hijar*, 214 S.W.3d 148, 154 (Tex. Ct. App. 2007) ("We conclude that

there is no private cause of action for violation of the federal Funeral Rule.").

> The federal Funeral Rule was adopted pursuant to Section 5 of the
> Federal Trade Commission Act . . . , 15 U.S.C. § 45(a)(1), which
> outlaws unfair and deceptive acts and practices in or affecting
> commerce, and Section 18, 15 U.S.C. § 57a(a)(1), which
> authorizes the Commission to prescribe "rules which define with
> specificity acts or practices which are unfair or deceptive acts or
> practices in or affecting commerce" and "requirements . . . for the
> purpose of preventing such acts or practices." *Harry & Bryant
> Co.*, 726 F.2d at 999. Federal courts have uniformly held that a
> private right of action does not exist under Section 5 of the
> [Federal Trade Commission Act].

*Id.* (citing cases); *see also Morrison v. Back Yard Burgers, Inc.*, 91 F. 3d 1184, 1187 (8th Cir.

1996) (holding "plaintiff should not be permitted to plead violation of FTC regulations as part of

a state common law fraud case [as a] decision to the contrary could be interpreted as substituting

violation of FTC regulations for state law requirements, thereby effectively extending a private

cause of action under the Federal Trade Commission Act"); *accord Martino v. Everhome Mortg.*,

639 F. Supp.2d 484, 491 n.16 (D. N.J. July 31, 2009) (no private right of action under Federal

Trade Commission Act); *Diessner v. Mortg. Elec. Registration Sys.*, 618 F. Supp.2d 1184, 1191

(D. Ariz. May 18, 2009) (same); *Rotblut v. Ben Hur Moving & Storage, Inc.*, 585 F. Supp. 2d

557, 560 (S.D. N.Y. Nov. 7, 2008) (same). Plaintiff himself even acknowledges that

enforcement of the Funeral Rule lies with the FTC. (Docket No. 1-1, ¶ 46.)

Second, Plaintiff's remaining claims do not constitute claims "so related to claims in the

action within such original jurisdiction that they form part of the same case or controversy"

under 28 U.S.C. § 1367. The set of operative facts in this dispute involve the interactions

between Plaintiff, Gill Brothers, and Great Western. *See OnePoint Solutions, LLC v. Borchert*,

486 F.3d 342, 350 (8th Cir. 2007) ("Claims within the action are part of the same case or

controversy if they derive from a common nucleus of operative fact" and would be expected to be tried in a single judicial proceeding." (quotation omitted)).   Plaintiff's claims against the Federal Defendants are only tangentially related to the principal dispute in this matter: carrying out the directives of the Trust established for Plaintiff's benefit.  *See Rothmeier v. Inv. Advisers, Inc.*, No. 3-94-431 (MJD/FLN), 932 F. Supp. 1156, 1161 (D. Minn. May 18, 1996) (declining to exercise supplemental jurisdiction over state-law claims when sole federal claim was dismissed and remaining claims were "not inextricably linked to the dismissed claims"); *Washington v. Daimlerchrysler Fin. Servs. Am. LLC*, No. 08-698 (JRT/JJK), 2009 WL 35469, at *2 (D. Minn. Jan. 5, 2009) (dismissing remaining state claims which were only tangentially related to already-dismissed federal claim).

Third, when determining whether to exercise supplemental jurisdiction, a federal court should "[b]alanc[e] factors such as judicial economy, convenience, fairness and comity." *Quinn v. Ocwen Fed. Bank FSB*, 470 F.3d 1240, 1249 (8th Cir. 2006).   The discretionary nature of supplemental jurisdiction naturally results in the exercise of supplemental jurisdiction in some cases and its decline in others.  *Compare Grain Land Coop v. Kar Kim Farms, Inc.*, 199 F.3d 983, 993 (8th Cir. 1999) ("[I]n light of the considerable resources invested by the court in arriving at its summary judgment ruling, we are unable to say that the district court abused its discretion [in exercising supplemental jurisdiction over the pendent claims after disposing of the federal claims].") *with Glorvigen v. Cirrus Design Corp.*, 581 F.3d 737, 749 (8th Cir. 2009) (affirming removal where analysis of federal claims did "not materially affect the remaining issues which involve state-law claims between non-diverse parties").

Moreover, the Eighth Circuit has "recognize[d] that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the

pendent jurisdiction doctrine-judicial economy, convenience, fairness, and comity-will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Grain Land Coop*, 199 F.3d at 993 (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7, 108 S. Ct. 614, 619 (1988)). "Courts should exercise judicial restraint and avoid state law issues whenever possible." *Washington*, 2009 WL 35469, at *2 (quotation omitted). When the "resolution of the remaining claims depends solely on a determination of state law, the Court should decline to exercise jurisdiction." *Glorgiven*, 581 F.3d at 749 (quotation omitted).

Because the remaining discrimination, negligence, tort, fiduciary-duty, and contract claims in this matter arise under state law and would require this Court to determine issues of state law, the limited nature of this Court's jurisdiction directs that this matter be remanded to the more appropriate, state-court forum.[6]   *See* 28 U.S.C. § 1447(c); *In re Norfolk S. Ry. Co.*, 592 F.3d at 910; *Peterson*, 12 F. Supp. 2d at 968.

---

[6] There is also no diversity jurisdiction. All of the remaining defendants are citizens of the State of Minnesota with the exception of Great Western. It is not disputed that Great Western is a foreign corporation. (*See* Docket Nos. 1-1, ¶¶ 6, 16; 19 at 2.) Diversity jurisdiction under 28 U.S.C. § 1332 requires a dispute between citizens of different states and an amount in controversy exceeding $75,000. *Kaufman v. Costco Wholesale Corp.*, No. 08-173 (JNE/SRN), 571 F. Supp.2d 1061, 1063 (D. Minn. Aug. 18, 2008) ("Original jurisdiction exists in the district courts in all civil actions between citizens of different states where the amount in controversy exceeds the sum of $75,000." (citing 28 U.S.C. § 1332(a)). Plaintiff has alleged damages of "at least $50,000."[6] (Docket No. 1-1, Relief(C)(a).) But the Trust's funds, and the life insurance policy they were to purchase, are worth less than $1,000, which is apparently the amount needed to carry out Plaintiff's wishes. (*See* Docket No. 1-1, ¶¶ 26-27.) Plaintiff himself states that the instant case involves "a small policy of 'burial' insurance." (*See* Docket No. 1-1, ¶ 24.)

And, although Plaintiff has also asserted a claim for punitive damages against Great Western and punitive damages are included in the amount-in-controversy calculation, punitive-damages claims are closely scrutinized to properly preserve the limits on diversity jurisdiction. *See OnePoint Solutions, LLC*, 486 F.3d at 348; *Peterson*, 12 F. Supp.2d at 968. The amount-in-controversy requirement "can be met by submitting proof that the plaintiff's verdict reasonably may well exceed the jurisdictional minimum, or if, on the face of the complaint, it is apparent that the claims are likely above that amount." *Kaufman*, 571 F. Supp.2d at 1063; *see OnePoint Solutions*, LLC, 486 F.3d at 348 (amount of punitive damages must be supported by competent proof). The amount-in-controversy requirement cannot be met here. *Cf. Kaufman*, 571 F. Supp.2d at 1064 (amount-in-controversy requirement satisfied where plaintiff pleaded damages "in excess of $50,000," injuries were serious and painful and some permanent, and plaintiff sought medical expenses and lost wages; plaintiff's medical records indicated potential need for surgery; and defendant "offer[ed] evidence of cases involving similar injuries having settlement amounts and jury verdicts in excess of the jurisdictional requirement").

**IV.**

Plaintiff has moved for sanctions and a protective order Fed. R. Civ. P. 5.2 due to Gill Brothers' failure to redact Plaintiff's social-security number and birthdate when filing the McGraw affidavit and accompanying exhibits.  (*See* Docket Nos. 76-77.)  The Court reviewed Gill Brothers' submissions and ordered Gill Brothers to show cause why sanctions should not be imposed not only for the social-security number and birthdate, but also a financial-account number noticed by the Court.  (Docket No. 91.)

Gill Brothers opposes Plaintiff's motion for sanctions, arguing that Plaintiff waived any privacy in the financial-account information when he filed a similar statement without redaction in state court; Plaintiff's birthdate is a matter of public record based on its electronic accessibility through the Minnesota Department of Corrections' website; and the disclosure of Plaintiff's social-security number was inadvertent and Plaintiff has not shown any harm from the disclosure.  (Docket No. 122 at 2-9.)  Gill Brothers also points out that it promptly took action and refiled the documents at issue, redacting Plaintiff's social-security number and birthdate, within two days.  (Docket No. 122 at 3-4; *see* Docket Nos. 76, 83.)

Rule 5.2 of the Federal Rules of Civil Procedure provides:

> Unless the court orders otherwise, in an electronic or paper filing with the court that contains an individual's social-security number, taxpayer-identification number, or birth date, the name of an individual known to be a minor, or a financial-account number, a party or nonparty making the filing may include only:
>
> (1) the last four digits of the social-security number and taxpayer-identification number;
>
> (2) the year of the individual's birth;
>
> (3) the minor's initials; and
>
> (4) the last four digits of the financial-account number.

Fed. R. Civ. P. 5.2(a).

Beginning with the financial-account number, the Court agrees with Gill Brothers that any privacy in this information was waived when Plaintiff included the full account number in an attachment to the Complaint filed in state court. (*Compare* Docket No. 1-1, Ex. B *with* Docket No. 26-1 at 4 *with* Docket No. 83-1 at 4.)  *See* Fed. R. Civ. P. 5.2(b)(3), (4) (redaction requirement does not apply to "official record of a state-court proceeding" and a court record that "was not subject to the redaction requirement when originally filed"); *see also* Fed. R. Civ. P. 5.2(h) (protection waived when person files own information without redaction and not under seal).  With respect to Plaintiff's birthdate, the Court observes that Rule 5.2 does not exempt from protection personal information that may be publicly available from other sources.  *See* Fed. R. Civ. P. 5.2(b) (listing exemptions from the redaction requirement).  However, the freely accessible nature of the information to the public weighs into the consideration of harm resulting from disclosure.  As for the social-security number, the Court notes that *both* Plaintiff and Gill Brothers filed documents containing the social-security number of a third person, who is now deceased.[7]  (*See* Docket No. 1-1, ¶ 28, Ex. A; *compare* Docket No. 1-1, Ex. A *with* Docket No. 26-1 at 3.)

District courts are given wide discretion in determining sanctions.  *Hutchins v. A.G. Edwards & Sons, Inc.*, 116 F.3d 1256, 1260 (8th Cir. 1997) ("Because the district courts are more familiar with proceedings before them and with the conduct of counsel than we are, we should give them a large measure of discretion in deciding what sanctions are appropriate for misconduct.") (quotation omitted)).  Given the quick response of Gill Brothers once apprised of the error, the Court concludes that sanctions are not appropriate.  *Cf.  Allstate Ins. Co. v. Linea*

---

[7] Gill Brothers subsequently corrected its filing.  (*See* Docket Nos. 83-1 at 2, 104-1 at 3.)

*Latina de Accidentes, Inc.*, No. 09-3681 (JNE/JJK), 2010 WL 5014386, at *2-3 (D. Minn. Nov. 24, 2010) (imposing sanctions where plaintiffs took no opportunity to redact birthdates, minors' names, financial-account numbers, and at least one social-security number for "months after they received notice of violations of Rule 5.2(a) and several weeks after their attention had been directed to examples of those violations"). Further, because the Court has already sealed the documents containing Plaintiff's information and ordered Gill Brothers to file redacted versions of those documents, Plaintiff's request for a protective order is moot. *See* Fed. R. Civ. P. 5.2(e). Therefore, the Court recommends that Plaintiff's motion be denied.

[Continued on next page.]

**V.**

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. The Federal Defendants' Motion to Dismiss (Docket No. 29) be **GRANTED**;

2. Plaintiff's Motion for Sanctions and for a Protective Order (Under Fed. R. Civ. P. 5.2(a), (e)) (Docket No. 76) be **DENIED**; and

3. This matter, including but not limited to the remaining pending motions of Plaintiff, Gill Brothers, Great Western, and the State Defendants (*see* Docket Nos. 17, 23, 95, 115, 182), be **REMANDED** to the state court for resolution, or, alternatively, this matter be remanded and such motions be denied without prejudice to permit refiling in state court.

**VI.**

The Clerk of Court is **HEREBY DIRECTED TO SEAL** Docket No. 1-1 ("Summons and Complaint").

Dated:   January 13, 2012                                     *s/ Tony N. Leung*
                                                            Tony N. Leung
                                                            United States Magistrate Judge
                                                            for the District of Minnesota

                                                            *Richards v. Great Western Insurance Co. et al.*
                                                            File No. 11-cv-00965 (JRT/TNL)

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and by serving upon all parties written objections that specifically identify the portions of the Report to which objections are made and the basis of each objection.  This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before **January 31, 2012**.